UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) |
| --- | --- |
| | ) |
| v. | ) |
| | ) Docket no. 2:19-cr-00030-GZS |
| MICHAEL A. LIBERTY & PAUL E. HESS, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON GOVERNMENT'S MOTION FOR A FOSTER HEARING
RE: PAUL E. HESS**

Before the Court is the Government's Motion for a Foster Hearing (ECF No. 10). The Court held a conference of counsel on this Motion on March 12, 2019. Thereafter, Defendant Hess filed his Response (ECF No. 37) to the Government's Motion. On March 20, 2019, the Court held a hearing at which both sides submitted exhibits and the Court conducted a colloquy with Hess under oath.

To the extent that the Government's Motion requested a hearing and asked that the Court specifically inquire with Hess and Attorney Merrill regarding the topics listed in the Government's Proposed Questions (ECF No. 10-1), the Motion is GRANTED IN PART as reflected in the record of the Court's March 20, 2019 hearing. To the extent that the Government's Motion can be construed to request any other relief, the Motion is hereby DENIED.

**I.   LEGAL STANDARD**

The Sixth Amendment generally guarantees the assistance of counsel to each defendant. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.")  One element of this right is "the right of a

defendant who does not require appointed counsel to choose who will represent him." United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006) (citing Wheat v. United States, 486 U.S. 153, 159 (1988)). Another element of this Sixth Amendment right is "a right to conflict-free representation." United States v. Cardona-Vicenty, 842 F.3d 766, 771 (1st Cir. 2016) (quoting United States v. Hernandez–Lebron, 23 F.3d 600, 603 (1st Cir. 1994)).

When it is brought to the attention of the Court that counsel retained by a particular defendant may have a conflict, the Court has a duty "as early in the litigation as practicable, to comment on some of the risks confronted [by defendant's choice of counsel,] to insure that [the defendant is] aware of such risks, and to inquire diligently whether [the defendant] ha[s] discussed the risks with [his] attorney, and whether [he] understand[s] that [he] may retain [other] counsel." United States v. Foster, 469 F.2d 1, 5 (1st Cir. 1972). Within the First Circuit, the process for fulfilling this duty is generally referred to as a "Foster hearing."[1]

In the following section, the Court briefly lays out the applicable facts based on the evidence received at the March 20th Foster hearing, including its colloquy with Defendant Hess.

## II. FACTUAL FINDINGS

On February 27, 2019, Defendant Paul Hess was indicted on four counts of wire fraud, along with one count of conspiracy to commit wire fraud and one count of securities fraud. These criminal charges were the result of approximately two years of investigation into the financing of an entity known as Mozido by multiple federal agencies.

---

[1] While Foster and Federal Rule of Criminal Procedure 44(c) specifically contemplate joint representation of multiple defendants by a single attorney or firm, the procedure is equally applicable to successive representation, which is the potential conflict at issue here. See, e.g., United States v. Morales-Laureno, 947 F. Supp. 2d 184 (D.P.R. 2013) (noting that Foster hearings "are also conducted when a defendant's counsel has represented a former client who may be a potential witness for the government").

2

As part of this investigation, on June 13, 2017, Hess, represented by Attorney Juan Marcelino, appeared for an interview at the Office of the Security and Exchange Commission ("SEC") in Boston. At that time, the United States Attorney's Office for the District of Maine also interviewed Hess pursuant to the Proffer Agreement, dated June 13, 2017 (Gov't Ex. 1). As part of the same investigation, on June 26, 2017, the United States Attorney's Office entered into a similar proffer agreement with Paul Bedard, who was then represented by Attorney Bruce Merrill (Gov't Ex. 2). Bedard was then interviewed in accordance with his proffer agreement with counsel present. Earlier, on March 22, 2017, Paul Bedard sat for a full-day interview with the SEC in connection with the investigation into Mozido. Attorney Bruce Merrill also accompanied and represented Bedard for this earlier interview.

On or about April 1, 2018, Hess contacted Attorney Merrill to ask whether he might represent Hess. Thereafter, Attorney Merrill reached out to Paul Bedard to ask whether as a former client Bedard would waive any potential conflict of interest with his representation of Hess in "a parallel, but separate, criminal investigation related to Mozido." (Def. Ex. 1.) Bedard executed a written waiver of this potential conflict, which is dated April 1, 2018. (See id.) However, as of March 20, 2019, it is undisputed that Bedard, now represented by Attorney Neal Duffett, has rescinded this waiver. It is also undisputed that Bedard no longer works for Mozido, is not a Mozido investor, and has not been charged as a result of any of the Mozido-related investigations. While the Government indicates that Bedard may be a witness at trial, the Government also has acknowledged that Bedard is not a witness who can or would testify as to Hess' guilt.

The Government represents that it first raised the issue of a potential conflict with Attorney's Merrill's representation of Hess on April 23, 2018. At that time, Hess was aware he was a target of the ongoing Mozido criminal investigation and was engaged in informal discussions

3

regarding a potential disposition of this matter.  In a letter to Hess, dated August 31, 2018, Attorney Merrill noted the Government's conflict concerns.  In the same letter, Merrill represented to Hess, that he did not "believe that [Bedard's] interest, as they relate to his involvement with Michael Liberty and Mozido, are materially adverse to [Hess'] interests. . . . ." (Def. Ex. 2.)  On September 3, 2018, Hess acknowledged receipt of this letter and waived any potential conflict.  (See id.)

To the extent that the Government has indicated Bedard, Attorney Merrill's former client, may be called as a witness in any proceedings related to this case, Attorney Merrill has represented that in the absence of a valid waiver, he would not cross-examine his former client, nor would he talk to any attorney who might cross-examine Bedard.  When the Court engaged in a colloquy with Hess at the March 20th hearing, Hess indicated that he understood this limitation on Attorney's Merrill's representation and was "completely comfortable" with the arrangement.

Separate and apart from any potential conflict raised by Attorney Merrill's prior representation of Bedard, the Government's Motion also raises a potential conflict based on Attorney Merrill's receipt of payment for his representation of Hess from Hess' co-defendant, Michael Liberty.  Attorney Merrill acknowledged at the March 20th hearing that he has received a "partial payment" from Liberty in addition to receiving funds directly from Hess.  Attorney Merrill also acknowledged that additional payments from Liberty are a possibility.  Upon questioning from the Court, Hess indicated that he understood the possibility for tension and conflicts related to Liberty's potential installment payments to Attorney Merrill.  Additionally, on March 6, 2019, Hess executed a one-page "Consent to Payment of Legal Fees and Costs by Third Party (Def. Ex. 3).

4

Despite the potential impacts related to the former-client conflict and the co-defendant-fee-payment conflict, Hess, who appeared to be competent in all respects and well-educated, clearly indicated under oath that he "absolutely" wanted to continue to be represented by Attorney Merrill.

### III. DISCUSSION

The process of assessing a conflict begins with an examination of the applicable rules of professional responsibility. Here, the first applicable rule is Rule 1.9 of the Maine Rules of Professional Conduct, which governs an attorney's duty to his former clients. See D. Me. Loc. R. 83.3(e) (adopting the Maine Rules of Professional Conduct as the applicable standard for practice in the District of Maine). Rule 1.9 provides an explicit restriction on representing "another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." M. R. Prof. Conduct 1.9(a).

Both sides agree that the present case is, at minimum, "substantially related" to the matter in which Bedard was represented by Attorney Merrill. Thus, the dispute focuses only on whether the interests of Hess are "materially adverse" to the interest of Bedard. To qualify as materially adverse, the interests of Bedard must be directly adverse to the interests of Hess. See, e.g., United States v. Morrell-Corrada, 343 F. Supp. 2d 80, 84 (D.P.R. 2004) (citing ABA Comm. on Ethics and Professional Responsibility, Formal Op. 99–415 (1999) & In re Grand Jury Proceedings, 859 F.2d 1021, 1026 (1st Cir. 1988). In other words, the question is whether Attorney Merrill's representation of Hess "can be justly regarded as changing sides in the matter in question"? M. R. Prof. Conduct 1.9, cmt. 2. The answer: no. As it relates to the pending criminal investigation, Bedard does not appear to maintain any interests—Mozido-related or otherwise—that can be described as directly adverse to the interests of Hess.

5

In a similar vein, Rule 1.9 also restricts an attorney from revealing "confidences or secrets of a former client" or using such confidences or secrets "to the disadvantage of the former client." M. R. Prof. Conduct 1.9(c). The Court finds nothing in the record to suggest that Attorney Merrill will use or reveal confidences or secrets of Bedard in the course of representing Hess. Needless to say, Attorney Merrill's representations that he will in no way participate in any cross-examination of Bedard are critical to this finding. In short, on the record presented, the Court concludes that Attorney Merrill's representation of Hess does not run afoul of Rule 1.9.

Turning to the issue of fee payment, Maine Rule of Professional Conduct 1.8(f) requires an attorney to get informed consent from his client before accepting any compensation from a third party, in addition to explicitly requiring the attorney to maintain his independence, loyalty and confidentiality to the client. See also M. R. Prof. Conduct 1.7, cmt. 13. Here, Hess' informed consent is memorialized in the signed consent form submitted at the hearing. (See Def. Ex. 3.) Additionally, although it is not clear that the Court is required to do so, the Court did separately question Hess regarding his understanding and acceptance of the risks associated with having Attorney Merrill paid in part by his co-defendant. See, e.g., Bucuvalas v. United States, 98 F.3d 652, 655 (1st Cir. 1996) (declining to extend the "narrow" Foster rule to situations involving co-defendant's payment of legal fees to a separate attorney). Both the form and the colloquy confirm that Attorney Merrill understands his professional obligations to Hess and that Hess understands the potential risk for conflicts associated with this payment arrangement.

Based on the entirety of the record and its colloquy with the Defendant, the Court also concludes that Defendant Hess has knowingly and voluntarily waived his right to conflict-free representation in this case. Given these waivers, the Court concludes that the Government has not met its "heavy burden [of] demonstrating that disqualification is justified." In re Grand Jury

6

Proceedings, 859 F.2d 1021, 1026 (1st Cir. 1988) (noting that "disqualification of counsel should be a measure of last resort.") (internal quotations and citations omitted).

## IV. CONCLUSION

For the reasons just given, the Court GRANTS IN PART and DENIES IN PART the Government's Motion for a Foster Hearing (ECF No. 10).

SO ORDERED.

          /s/ George Z. Singal
          United States District Judge

Dated this 4th day of April, 2019.